STANLEY W. DEXTER *et al.*

*v.*

LAMBERT TREE *et al.*

*Filed at Ottawa March 27, 1886.*

1. ALLEY—*right of abutting owner to its use—and as to being public or private.* If an alley is a public one, a party whose buildings adjoin the same will have a right to its use for light and ventilation, as well as for all other lawful purposes; but if it is not public, the fact that it has remained a long time uninclosed, and such party has built his house with windows and doors opening upon it, and enjoyed the benefit of light and ventilation from it, will confer no right upon him to have it kept open.

2. DEDICATION—*in respect to an alley—in assessor's plat.* Where an assessor's plat of land, made for purposes of taxation, shows a strip seven feet wide, marked, "alley, see book 15, page 228," and the reference shows it to be a private alley, created for the sole use of the parties then owning adjacent property, the sale and conveyance of lots by the numbers and description, as shown by such plat, will not amount to a dedication of such strip as a public alley. Nor will the making of such conveyances affect the rights of persons to such alley who are not parties thereto.

3. PRESCRIPTIVE RIGHT—*the basis thereof—as to the use of an alley.* Every species of prescription by which property is acquired or lost, is founded upon the presumption that he who has had quiet and uninterrupted possession of anything for many years, has a just right, without which he would not have been permitted to continue its enjoyment. It must originate under a claim of right, and not under mere permission.

4. The use of a private alley of another by mere permission, without any claim of right to such use, which is not inconsistent with its use by the owners thereof, is not of such adverse character as will form the basis for a prescriptive right.

5. .Where there is nothing to show that the use of an alley was under a claim of right, or with the intention to enjoy it without regard to the wishes of the owners of the land, or that it was established and maintained for the benefit of the party using the same, but, on the contrary, it appears it was established for the private use of others, no prescriptive right can be claimed in such alley.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Mr. EDWARD J. JUDD, and Mr. A. M. PENCE, for the plaintiffs in error:

The plaintiffs in error have, by grant, acquired a right to use the alley for all purposes for which one may be used. The mere fact of conveying to plaintiffs in error according to the assessor's plat of 1866, on which an alley is shown north of said lot 5, incorporates said plat into the deed, and is sufficient to convey an easement in such alley. *Wiggins* v. *McCleary,* 49 N. Y. 346; *Cox* v. *James,* 45 id. 557; *Tallmadge* v. *East River Bank,* 26 id. 105.

The existence of an apparent alley, as shown by the position of the surrounding houses, the use of the same by occupants of the lot in question, and the acts of both plaintiffs and defendants in error in conveying by the plat showing the same, and other surrounding circumstances, are sufficient to show the intention of the parties, and to convey an easement, by implication, under the word appurtenances used in the conveyances. *Ingalls* v. *Plamondon,* 75 Ill. 118; *United States* v. *Appleton,* 1 Sumn. 500; *Parker* v. *Nightingale,* 6 Allen, 341; *Dunklee* v. *Railroad Co.* 4 Foster, 489; *Seymour* v. *Lewis,* 13 N. J. Eq. 439; *Seibert* v. *Sevan,* 8 Pa. St. 383; *Story* v. *Odin,* 12 Mass. 159; *Kent* v. *Waite,* 10 Pick. 140.

The plaintiffs in error are entitled to an easement in said alley by prescription, as the same has been used as such for almost forty years. *Haight* v. *Proprietors, etc.* 4 Washb. C. C. 601; *United States* v. *Appleton,* 1 Sumn. 500.

Messrs. DENT, BLACK & CRATTY BROS., for the defendants in error:

The distinction between a private right of way and one that is public in common, is a striking one; the former belonging only to the particular parties by whom it has been acquired, while the latter is for the free use of every member of the community. Angell on Highways, sec. 2.

The seven-foot strip was intended by the agreement made in respect thereto, for private use by the parties and privies therein designated, and could not, by any length of use by others in harmony with the agreement, as recorded, be said to be a public way. *Hall* v. *McLeod,* 2 Metc. 98; *City* v. *Jones,* 76 Ill. 232.

Here, the owners of the soil of the seven-foot strip retained all the rights and benefits of ownership consistent with the burden thereon, or easement therein, for which they stipulated as between themselves, their heirs, assigns and legal representatives. Washburn on Easements, (2d ed.) 244.

This agreement was limited to the parties concerned in the parcels covered thereby. *Evans* v. *Dana,* 7 R. I. 306; *Allen* v. *Gomme,* 11 Ad. & Ell. 759; Washburn on Easements, 227, 228, 239, 240.

The right of passage, or other burdens, can not be enlarged or extended by any of the parties thereto, to accommodate other adjoining closes. *Davenport* v. *Lamson,* 20 Pick. 72; *French* v. *Martin,* 32 N. H. 316.

Magie & High's rights could not be disturbed by the acquisition of Boyce of the property on the south, not named in the agreement. Nor could Boyce acquire any additional right by a mere permissive use of the seven feet, for prospect or light, or even other use thereof, while it was left vacant under the agreement. *City of Quincy* v. *Jones,* 76 Ill. 231; *Railroad Co.* v. *Hoag,* 90 id. 340; *Kilburn* v. *Adams,* 7 Metc. 33; *Commonwealth* v. *Fiske,* 8 id. 245; *Harper* v. *Parish of the Advent,* 7 Allen, 478.

The English doctrine of a prescriptive right to light and prospect is not in force in this State. *Guest* v. *Reynolds,* 68 Ill. 478.

That doctrine is not applicable to this country, and user, even when connected with a claim of right, will not support it. *Hayden* v. *Dutcher,* 31 N. J. Eq. 217.

All acts relied upon by plaintiffs in error to show user, were merely permissive, and not inconsistent with the agreement of April 7, 1845, and they can not be relied upon as giving any prescriptive right. *Hall* v. *McLeod*, 2 Metc. (Ky.) 98; *City* v. *Johnson*, 98 Ill. 618; *City of Quincy* v. *Jones*, 76 id. 232.

The agreement having defined the rights of the parties, it is not to be controlled or contradicted by parol testimony. Washburn on Easements, (2d ed.) 225.

The assessor's plat was made for convenience of assessing the property, and could not affect the rights of the parties acquired before it was made.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This was a bill in chancery, filed in the circuit court of Cook county by the plaintiffs in error, to enjoin the defendants in error from obstructing a strip of ground seven feet wide and sixty feet long, which they claim defendants in error have no right to use except as an alley. The bill charges that plaintiffs in° error are the owners of property adjoining said strip of ground on the south, upon which is a building three stories high, with doors and windows opening upon said strip, which affords light and ventilation to said house; that defendants in error have built a wall on the south line of said strip of ground, and arched over said supposed alley, and closed up and obstructed several of the apertures in the building of plaintiffs in error. The prayer of the bill is, that the defendants pay such damages as plaintiffs have sustained in the premises; that they be enjoined from obstructing said alley, and from allowing the wall already erected to remain, and that they be compelled to remove the wall already erected, and for other relief, etc. Defendants in error, in their answer, claim that said strip of ground is a private alley belonging to them, and used by them as a private alley, for their mutual accom-

modation, under a written agreement, and deny that it was ever dedicated to the public or used by the public as an alley, or that the plaintiffs in error, or any one else except defendants in error and those under whom they claim, ever acquired any easement therein.

The facts shown by the evidence are, that about April 7, 1845, one Leroy S. Boyce was the owner of sub-lots 3, 4, and north ten feet of lot 5, all being a part of lot 4, in block 34, in the original town of Chicago. Lot 3 had a frontage of twenty feet on Lake street, and sixty-five feet on La Salle street. Lot 4 adjoined lot 3 on the south, having a frontage of twenty-five feet on La Salle street, by sixty feet in depth from west to east. Lot 5 adjoined lot 4 on the south, with a frontage on La Salle street, and of same depth as lot 4. Thus it appears that Boyce owned twenty feet by one hundred feet on the corner of Lake and La Salle streets, the frontage on Lake street being twenty feet, and on La Salle street one hundred feet. On April 7, 1845, said Boyce conveyed to Haines H. Magie and John High, Jr., by metes and bounds, sub-lots 1, 3, 4, and north ten feet of sub-lot 5, of said lot 4, block 34, and being forty feet on Lake street, running south one hundred feet to the south line of the north ten feet of sub-lot 5, of lot 4, in block 34, in the original town of Chicago. High and Magie already owned sub-lot 2 in said lot 4, and which was situated between said sub-lots 1 and 3, and north of sub-lot 4. On the same day, the said Boyce, High and Magie executed a contract in writing, which was duly acknowledged, and recorded in the recorder's office of Cook county on the 23d day of June, 1845, in book 15, at page 228, whereby said Boyce agreed a passage six feet wide on La Salle street, and to be arched over, (the height of arch being left blank,) and extending east twenty feet from La Salle street, shall be and remain open and unobstructed as an alley, for the *sole and exclusive use* of the parties, (to such contract,) their heirs and legal representatives, it being understood that one foot by twenty

of the extreme south end of said lot on La Salle street is reserved for building a wall, so that an arch may be constructed over said alley; and said Magie and High, on their part, agreed with said Boyce that seven feet by thirty-five, on the south end of the lot conveyed to them by said Boyce, should be and remain unobstructed, to be used as an alley for the like *sole and exclusive use* of the said parties, their heirs, assigns and legal representatives. They further agreed that said Boyce might use five feet square in the south-east corner of their said lot for privies. Up to this time said Boyce owned no land south of this alley. In December, 1845, Boyce became the owner of the ground adjoining this alley on the south, and the plaintiffs in error are now the owners of the title then acquired by him, and the defendants in error are the owners of the property owned by Boyce, High and Magie on the 7th of April, 1845. From April, A. D. 1845, up to 1866, the property, including this alley, was assessed as private property, by metes and bounds, and the taxes paid thereon. In that year the assessor made a plat of said land for the convenience of assessing, upon which plat the seven-foot alley is shown, and upon the space representing said alley on said plat are these words: "Alley, see book 15, page 228." By this plat the ground north of said alley owned by defendants in error, is designated as lots 2, 3 and 4, in the assessor's addition, and since the recording of said plat the property has been assessed, and taxes regularly paid thereon, by the description of lots 2, 3 and 4, in assessor's addition. In some of the conveyances under which the defendants in error claim, the property is described according to the description in the assessor's addition, but in such case the seven feet south and adjoining is included in express terms. Previous to the great fire of 1871 there was a building on the land owned by plaintiffs in error, the north line of which was the south line of this alley, from which building there were doors and windows opening upon the alley. The public never used

said alley, nor did the public authorities ever assume or exercise any control over it. The alley was used by those occupying the building next east of the corner of Lake and La Salle streets, for taking in freight from La Salle street, and also by those on the corner for storing empty boxes, barrels, etc., until they could be disposed of. The only use made of the alley by those occupying the house on the south side, was to carry provisions into the kitchen in the rear of the house, and as a place to deposit refuse matter. The building on the south side was destroyed by fire in A. D. 1871, and when plaintiffs in error were about to rebuild, they were notified by defendants in error not to put any openings on the north side, and if they did, defendants would build a wall and close them up, and their attention was expressly called to the agreement between Boyce, Magie and High, of April 7, 1845, and that defendants claimed that the alley was private property, but they claimed the right to put such doors and windows in, and did so. This was in 1878. In 1882, defendants in error built a five story building on their lots, that of Lambert Tree being the whole length of his lot, having a passage under the rear of said building six feet wide and one story high, being the seven feet in dispute, less one foot, upon which the south wall rests, that of defendant High extending south to the north line of said alley. Defendant in error High has also erected a wall on the south line of said seven feet, and said wall so erected by defendants in error completely closed up all of the openings on the north side of the house of plaintiffs in error. The *circuit court*, on hearing, dismissed the bill for want of equity. The Appellate Court affirmed the decree of the circuit court, and the case is now here on a writ of error to that court, and reversal of its judgment asked.

The plaintiffs in error claim a right to the use of the ground in controversy for the purpose of light and ventilation. Of course, if the ground is a public alley, they are entitled to the use of it for that as well as for all other lawful

purposes, but if it is not a public alley, then the mere fact that it has remained uninclosed, and that they have built a house with doors and windows opening upon it, and enjoyed the benefit of the light and ventilation which it offered so long as the owners chose to leave it open, confers no right upon them to have it kept open. The case of *Guest* v. *Reynolds,* 68 Ill. 478, is conclusive upon that point.

Plaintiffs in error insist that when the owners of the property now owned by defendants in error, after the recording of the assessor's plat, conveyed and accepted conveyances describing the property according to that plat, they thereby ratified such plat, and the alley thereon designated became a public alley by dedication. Suppose that it be conceded that a conveyance made according to a recorded plat, ratifies the plat as correct, and that the grantee accepting such a conveyance would be estopped to deny the correctness of the plat, how would it affect this case? The assessor's plat, it is true, has a strip seven feet wide at the south end of the property owned by defendants in error, upon which are these words: "Alley, see book 15, page 228." This does not state whether this is a public alley or a private alley, but it refers every one to the book and page where the instrument creating it may be found, and when found, it appears that it is a private alley, for the *sole and exclusive use* of the parties then owning the property, now owned by the defendants in error, and that the party owning the corner lot reserved one foot on the extreme south side of said alley for the purpose of building a wall and constructing an arch over said alley,—the very thing the defendants in error who now own said property have done, and of which plaintiffs in error complain. It may be, if the conveyances through which the defendants in error claim, had simply described the lots by their numbers, as shown on the assessor's plat, this strip would not have passed by such conveyances; but whether that be so or not, is not material, as the parties always added to the number of

the lots in the description, "and seven feet south and adjoining," and the same description was followed by the different assessors, and taxes regularly paid by defendants in error and those under whom they claim. Of course, the making and accepting of deeds upon the property south of the alley by plaintiffs in error, and those under whom they claim, according to assessor's plat, can not affect the rights of defendants in error, who are not parties to such conveyances. Nor could the fact that Boyce, after making the agreement with Magie and High, acquired title to property south of the alley, change the rights of the parties, as fixed by this agreement, so as to extend the benefits of the alley to such after acquired property. We are, therefore, of opinion that there is no dedication of this strip of ground for the purposes of a public alley shown, but that it has been used by the owners thereof as a private alley, in conformity to the agreement creating it, and that whatever use plaintiffs have made of it was made permissively.

Plaintiffs in error also claim that said alley is a public alley by prescription, or, at least, that they have such an easement in it by prescription as entitles them to the continued and unobstructed use of it. "Every species of prescription by which property is acquired or lost, is founded upon this presumption, that he who has had quiet and uninterrupted possession of anything for a long period of years, is supposed to have a just right, without which he would not have been suffered to continue in the enjoyment of it." (2 Cruise's Digest, title "Prescription," chap. 1, sec. 34.) In *Gentleman* v. *Soule*, 32 Ill. 279, it was said, that to acquire an easement by travel over the land of another, "it must also be open, adverse, and under claim of right," and for the requisite period.

If the claim by prescription is based upon the use of air and ventilation, we have already seen it is untenable, under *Guest* v. *Reynolds, supra.* What other use have the defendants, or those under whom they claim, made of said alley,

which raises any presumption of a right so to use it? There is nothing in the record tending to prove that the public ever used it at all, or made any claim to it. The only evidence we can find of any use made of it by plaintiffs in error, was to carry their provisions to the kitchen over this ground, and to empty the refuse matter from their table through the doors and windows opening upon it,—and all that was before the present building was erected. There is nothing tending to show that the plaintiffs did these acts under any claims of right, and so far as we can see, they were merely permissive, and in no way adverse to the rights of defendants in error, nor inconsistent with its use by defendants in error under the agreement between Boyce, Magie and High. In *Hall* v. *McLeod*, 2 Metc. (Ky.) 102, the court says: "It can not be admitted that where the proprietor of lands has a private passway through it for his own use, the mere permissive use of it by others for half a century would confer upon them any right to its enjoyment. So long as it is merely permissive it confers no right, but the proprietor can prohibit its use, or discontinue it altogether, at his pleasure." To create the presumption of a grant of the right of way, the circumstances attending its use must be such as to make it appear that it was established for the benefit of the claimant, or that it was accompanied by a claim of right, or by such acts as manifested an intention to enjoy it, without regard to the wishes of the owners of the land. The use must have been enjoyed under such circumstances as will indicate that it has been claimed as a right, and has not been regarded by the parties merely as a privilege, revocable at the pleasure of the owners of the soil. In *City of Quincy* v. *Jones et al.* 76 Ill. 231, this court said: "Moreover, it seems well settled that an adverse right to an easement can not grow out of a mere permissive enjoyment for any length of time."

We can not find in the evidence in this case any of the elements of a prescriptive right in plaintiffs in error to an ease-

ment in said land, except the slight use made thereof before mentioned, which was merely permissive, and entirely consistent with the rights of defendants in error under the agreement creating the alley. There is nothing to show that such use was under claim of right, or with the intention to enjoy it without regard to the wishes of the owners of the land, or that this alley was established or maintained for the benefit of plaintiffs in error, but, on the contrary, it clearly appears that it was established for the sole and exclusive use of the owners of the land on the north of it.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*